# In the United States Court of Federal Claims

No. 09-742T
Filed: April 30, 2012
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| JOHN R. GORSKI and JEAN A. GORSKI, | * | |
| | * | |
| Plaintiffs, | * | Tax Refund Claim, 26 U.S.C. § 7422(a); |
| | * | Casualty Loss, 26 U.S.C. § 165(c); |
| v. | * | Issue Preclusion. |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**F. Patrick Matthews,** Matthews Law Offices, Racine, Wisconsin, Counsel for Plaintiffs.

**Shelley D. Leonard,** United States Department of Justice, Tax Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

## I.      RELEVANT FACTUAL BACKGROUND.[1]

On May 18, 1999, the City of Chicago ("the City") demolished a house ("the Oakdale house") and the personal property therein located at 6974 W. Oakdale Avenue, Chicago, Illinois. Sec. Am. Compl. ¶ 12; *see also* Gov't PFUF, Ex. 35 at B364.  At the time, the Oakdale house was owned by the Estate of Roman M. Gorski ("the Estate").  Gov't PFUF, Ex. 7 at B89; Gov't PFUF, Ex. 37.  Roman Gorski was the father of John R. Gorski and Wayne Gorski.  Gov't PFUF, Ex. 1 at B3.  Mr. John R. Gorski and Mr. Wayne Gorski were the sole heirs to the Estate.

---

[1] The facts cited herein were derived from Plaintiffs' Second Amended Complaint ("Sec. Am. Compl.") and Exhibits A-B attached thereto ("Sec. Am. Compl. Ex. __"); the Government's Proposed Findings Of Uncontroverted Facts ("Gov't PFUF") and Exhibits 1-53 attached thereto ("Gov't PFUF, Ex. __"); and Plaintiffs' Response to the Government's Proposed Findings Of Uncontroverted Facts ("Pl. PFUF Resp.") and Exhibits A-C attached thereto ("Pl. PFUF Resp., Ex. __").

Gov't PFUF, Ex. 1 at B3.  Mr. Wayne Gorski was the Independent Administrator for the Estate. Gov't PFUF, Ex. 1 at B4-5; Gov't PFUF, Ex. 38 at B377-78.

Subsequently, on May 17, 2001, Mr. Wayne Gorski filed suit against the City in the Circuit Court of Cook County (the "State Court") for wrongful demolition of the Oakdale house. Gov't PFUF, Ex. 39 at B380.  The State Court Complaint, as amended August 10, 2001, alleged claims for failure to provide proper notice and failure to comply with the City Ordinance on demolitions.  Gov't PFUF, Ex. 39 at B382-83.  The Amended Complaint sought $250,000 in damages "for the loss of the property and personal possessions that resulted from this illegal demolition[.]"  Gov't PFUF, Ex. 39 at B383-84.

On July 22, 2002, Mr. Wayne Gorski moved for summary judgment as to liability, arguing that the City failed properly to notify himself and Mr. John R. Gorski of the pending demolition.  Gov't PFUF, Ex. 40.  On August 27, 2002 the State Court granted Mr. Wayne Gorski's Motion.  Gov't PFUF, Ex. 41.  The case then proceeded to trial solely on the issue of damages.[2]  *See* Gov't PFUF, Ex. 42.

On May 8, 2003, a hearing was held on the issue of damages before Judge Robert E. Gordon of the Circuit Court of Cook County.  Gov't PFUF, Ex. 47 at B574.  On that same date, Judge Gordon entered a final order stating:

This case appearing as a bench trial, the jury having been waived by plaintiff, the judge having heard the evidence

IT IS HEREBY ORDERED THAT –

(1) The court finds in favor of the plaintiff & against the City of Chicago in the amount of [$] 110,000 and judgment is entered in favor of Wayne Gorski and against the City of Chicago in the amount of $110,000.00.

(2) It is further ordered that the City return [$] 8,967.76 from the demolition lien to the plaintiff.

(3) The City shall have no liens against the Gorski ownership of the property.

(4) No Costs.

Gov't PFUF, Ex. 47 at B574.

Mr. Wayne Gorski did not appeal this judgment and subsequently received a check from the City in the amount of $120,278.03.  Gov't PFUF, Ex. 47 at B575-76.  This amount was then split, with Mr. John R. Gorski receiving $54,125.12 (45%), Mr. Wayne Gorski receiving

---

[2] Prior to trial, the City withdrew a comparative negligence defense.  *See* Gov't PFUF, Ex. 24.

$42,097.31 (35%), and the remaining $24,055.60 (20%) paid for legal fees.  Gov't PFUF, Ex. 4 at B80-81.

On November 21, 2003, a "Notice of Account – Final" was entered in the Circuit Court of Cook County, Probate Division, reporting, among other items, a "net casualty loss" for the Estate of $277,686.59 that was derived by adding up "lost assets" and "expenses," and then subtracting out "partially recovered assets."  Gov't PFUF, Ex. 4 at B76-80.  The Estate was closed on December 3, 2003.  Gov't PFUF, Ex. 4 at B82.

On October 19, 2004, Mr. John R. Gorski and his wife, Jean Gorski, filed a joint federal income tax return, Form 1040, for the 2003 tax year.  Gov't PFUF, Ex. 50 at B596-97.  For the 2003 tax year, Mr. John R. Gorski reported an income of $13,634.34 in Social Security benefits and income of $60,764.71 from Mrs. Jean Gorski's job.  Gov't PFUF, Ex. 50 at B596.  Their joint return claimed the standard deduction and did not claim a casualty loss.  Gov't PFUF, Ex. 50 at B596-97.  Subsequently, they paid the amount of taxes they owed for the 2003 tax year. *See* Gov't PFUF, Ex. 50 at 599.

On April 19, 2006, Mr. John R. Gorski and Mrs. Jean Gorski filed an amended joint federal income tax return, Form 1040X, for the 2003 tax year.  Gov't PFUF, Ex. 51 at B603-09.  On the amended return, Plaintiffs claimed an itemized deduction in the amount of $269,230.37 for the casualty loss of the Oakdale house, resulting in a refund claim for the entire amount of federal taxes paid by the Plaintiffs for the 2003 tax year, *i.e.*, $8,251.00.  Gov't PFUF, Ex. 51 at B603, 605-06.  They also filed an Application for Tentative Refund, Form 1045, for claimed carry-back losses for the 2000, 2001, and 2002 tax years.  Gov't PFUF, Ex. 51 at B610-11.

On October 31, 2007, the Internal Revenue Service ("IRS") sent a letter to Plaintiffs, disallowing the 2003 refund claim in total on the ground that casualty losses are deductible only in the taxable year that the casualty occurred.  Gov't PFUF, Ex. 52.  The IRS also explained that the casualty loss was not allowed, because it was not substantiated in that the Gorskis "ha[d] not shown that the fair market value [of the Oakdale house] immediately before the loss was more than you received or expect to receive as insurance proceeds or other compensation."  Gov't PFUF, Ex. 52.

## II.    PROCEDURAL HISTORY.

The procedural history of this case from October 29, 2009, the date Mr. John R. Gorski filed a *pro se* complaint in the United States Court of Federal Claims for a tax refund, to August 16, 2010, is set forth in *Gorski* v. *United States*, 94 Fed. Cl. 253, 254-55 (2010).

On August 17, 2010, the court issued a Memorandum Opinion and Order granting the Government's January 29, 2010 Motion For Joinder to add Jean A. Gorski as a co-Plaintiff and requiring Plaintiffs to file a Second Amended Complaint on or before September 30, 2010, and the Government to file an Answer within 30 days thereafter.  *Id*. at 259.

On October 4, 2010, the court granted an oral request for enlargement of time until October 12, 2010 for Plaintiffs to file a Second Amended Complaint.

On November 29, 2010, F. Patrick Matthews, Esq., filed as counsel for Plaintiffs.

On December 29, 2010, Plaintiffs filed a Motion For Extension Of Time to file the Second Amended Complaint and complete fact discovery.  The court granted that motion on December 30, 2010.  On January 14, 2011, a Second Amended Complaint was filed adding Mrs. Jean Gorski as a co-Plaintiff.  On February 16, 2011, the Government filed an Answer to the Second Amended Complaint.  On April 30, 2011, fact discovery was completed.

On July 15, 2011, the Government filed a Motion For Summary Judgment ("Gov't Mot.") on the ground that issue preclusion bars Plaintiffs from claiming a casualty loss deduction.  In the alternative, the Government argued that the demolition of the Oakdale house was not a casualty loss within the meaning of 26 U.S.C. ("I.R.C.") § 165(c) and, in any event, Plaintiffs were entitled only to fifty percent of any claimed casualty loss deduction.  That same day the Government also filed Proposed Findings Of Uncontroverted Facts.

On December 1, 2011, Plaintiffs submitted a Response to the Government's Motion For Summary Judgment ("Pl. Resp.") and a Response to the Government's Proposed Findings of Uncontroverted Facts.  On January 23, 2012, the Government filed a Reply ("Gov't Reply").

## III.   DISCUSSION.

### A.   Jurisdiction.

The Tucker Act, in conjunction with I.R.C. § 7422(a), authorizes the United States Court of Federal Claims to adjudicate tax refund claims, if a taxpayer has paid the full assessed federal tax liability and timely filed a refund claim with the IRS stating the grounds for the claim.  *See* 28 U.S.C. § 1491(a); I.R.C. §§ 6511(a), 7422(a); *see also Chicago Milwaukee Corp.* v. *United States*, 40 F.3d 373, 374 (Fed. Cir. 1994) ("Section 7422(a) waives the United States' sovereign immunity from [federal tax] refund suits, provided the taxpayer has previously filed a qualifying administrative refund claim.") (internal citations omitted)); *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (holding that a tax refund claim must be dismissed if the "principal tax deficiency has not been paid in full").  If the claim is denied by the IRS and the taxpayer timely files suit, the United States Court of Federal Claims has jurisdiction to adjudicate the tax refund claim.  *See* I.R.C. § 6532(a); *see also United States* v. *Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008) ("Congress has . . . established a detailed refund scheme that subjects complaining taxpayers to various requirements before they can bring suit.").

Plaintiffs have paid in full the amount of taxes owed for the 2003 tax year.  Gov't PFUF, Ex. 50 at B599.  The January 14, 2011 Second Amended Complaint alleges that fact and that the IRS improperly disallowed the Plaintiffs' April 2006 Claim for Refund.  Sec. Am. Compl. ¶¶ 3-4, 17-22; *see also* Gov't PFUF, Ex. 52 (Oct. 31, 2007 letter from IRS disallowing Plaintiffs' refund claim).  Therefore, the court has jurisdiction to adjudicate the claims alleged therein.

**B.      Standing.**

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975).    Standing must be determined "as of the commencement of suit."    *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005).  The party invoking federal jurisdiction bears the burden of establishing standing.  *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citations omitted).

The January 14, 2011 Second Amended Complaint alleges that Plaintiffs have suffered an "injury in fact," *i.e.*, the disallowance of Plaintiffs' income tax refund claim, that is concrete and particularized, traceable to the IRS's actions, and redressable by a favorable decision.  Sec. Am. Compl. ¶¶ 3, 17-23.  Accordingly, Plaintiffs have standing to seek an adjudication of the claims alleged therein.

**C.      Standard Of Review For Summary Judgment.**

On a motion for summary judgment, the moving party must establish that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law.  *See Duramed Pharm., Inc.*, v. *Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) ("Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c).  Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  The "existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Id.* at 247-48.

**D.      Whether Plaintiffs' Refund Claim Based On A Casualty Loss Is Barred By Issue Preclusion.**

**1.      The Parties' Arguments.**

**a.      The Government's Argument.**

The Government argues that, as a matter of law, Plaintiffs are barred from re-litigating any casualty loss arising from the demolition of the Oakdale house because on May 8, 2003, the Circuit Court of Cook County, Illinois entered an Order in *Wayne Gorski v. City of Chicago*, No. 00L5639, in favor of Mr. Wayne Gorski in the amount of $110,000.  Gov't Mot. at 19-31 (citing

Gov't PFUF, Ex. 47 at B574).  I.R.C. § 165(a) provides that a taxpayer may claim a casualty loss deduction, but only to the extent any such loss was "not compensated for by insurance or otherwise."  I.R.C. § 165(a).  In this case, whether Plaintiffs were compensated in full for any casualty loss depends on "the value of [P]laintiffs' casualty loss claim."  Gov't Mot. at 21.  Mr. Wayne Gorski prevailed in State Court on the issue of liability at summary judgment, and his case proceeded to trial only on the issue of damages, *i.e.*, the value of the Oakdale house and personal property therein.  Gov't PFUF, Ex. 41.  Mr. Wayne Gorski was awarded a judgment of $110,000 in damages that the City paid in full.  Gov't PFUF, Ex. 47 at B574-75.  Therefore, as a matter of law, the May 8, 2003 order and judgment precludes Plaintiffs in this case from claiming any additional amounts for the loss of the Oakdale house and personal property therein.  Gov't Mot. at 21.

Federal courts apply the law of the state where an order and judgment is entered to determine the preclusive effect thereof.  *See Envosys LLC* v. *Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1342 (Fed. Cir. 2010) (holding that to determine the preclusive effects of a state court judgment in a subsequent federal lawsuit, a federal court looks to the law of the state where the judgment was rendered).  Under Illinois state law, re-litigation of an issue is barred where:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010).  In this case, the State Court order and judgment meets all three elements of this test.  First, the amended complaint in the State Court action requested damages for "the loss of the property and personal possessions that resulted from this illegal demolition."  Gov't PFUF, Ex. 39 at B384.  At trial, both parties presented evidence on this issue and the trial judge issued an order and entered judgment awarding damages to the plaintiff.  Gov't Mot. at 23-24.  The dispositive issue in this case is therefore identical to that litigated in the State Court action.  Gov't Mot. at 25.

Second, "it cannot be disputed that the [S]tate [C]ourt issued final judgment on the merits of [the proper value of the Oakdale house and its contents]."  Gov't Mot. at 25.

Third, Mr. John R. Gorski, a Plaintiff in this case, was in privity with Mr. Wayne Gorski, the plaintiff in the State Court action.  Gov't Mot. at 26-31.  Illinois courts and the RESTATEMENT (SECOND) OF JUDGMENTS[3] recognize privity between estate administrators and beneficiaries for the purpose of determining issue preclusion.  *See Bryntesen* v. *Carroll Constr. Co.*, 167 N.E.2d 581, 585 (Ill. App. Ct. 1960), *rev'd on other grounds*, 174 N.E.2d 172 (Ill. 1961) (holding that a plaintiff's claim was barred by *res judicata* where a prior suit was brought by the administrator of an estate to which the plaintiff was a beneficiary); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 41 cmt. c (1982) ("An administrator of a decedent's estate . . . ha[s] authority to represent the estate and the interests of those who are its beneficiaries, in virtue of

---

[3] Illinois courts have looked to the RESTATEMENT (SECOND) OF JUDGMENTS to define privity.  *See State Farm Fire & Cas. Co.* v. *John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577, 588 (Ill. App. Ct.  2009).

their appointment."). Although the State Court's case caption did not state that Mr. Wayne Gorski was suing in his capacity as Independent Administrator of the Estate, that is an undisputed fact. Gov't Mot. at 28-29. The January 14, 2011 Second Amended Complaint in this case states that the Estate brought the liability action and any judgment was payable to the Estate (Sec. Am. Compl. ¶¶ 13-14); the Estate was the proper party to bring the dispute as the owner of the property (Gov't PFUF, Ex. 7 at B89); and Mr. Wayne Gorski and Mr. John R. Gorski split the proceeds from the judgment (Gov't PFUF, Ex. 4 at B81).

In addition, Mr. John R. Gorski was involved in the State Court litigation. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 39 (1982) ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."). It is an undisputed fact that Mr. John R. Gorski urged his brother to file suit (Gov't PFUF, Ex. 3 at B55) and Mr. John R. Gorski reviewed the State Court complaint before it was filed (Gov't PFUF, Ex. 3 at B56). He monitored the litigation. Gov't PFUF, Ex. 3 at B56. He also videotaped the deposition of a City witness. Gov't PFUF, Ex. 3 at B58. He testified at trial (Gov't PFUF, Ex. 3 at B60-61) and, importantly, prepared the lists of personal property in the Oakdale house submitted at trial. Gov't PFUF, Ex. 3 at B57, B60-70; *see also id.*, Ex. 46 (personal property lists).

Mr. John R. Gorski and Mr. Wayne Gorski also shared a mutual and/or successive property right in the Estate. *Bd. of Educ. of Sunset Ridge Sch. Dist. No. 29* v. *Vill. of Northbrook*, 692 N.E.2d 1278, 1285 (Ill. App. Ct. 1998) ("[F]or purposes of *res judicata*, privity exists between parties who share a mutual or successive relationship in property rights which were the subject of an earlier action."). As such, both had a mutual interest in the Oakdale house as co-heirs to their father's estate and held successive interests therein, once it was distributed from the Estate. Gov't Mot. at 30.

### b.    Plaintiffs' Response.

Plaintiffs respond that issue preclusion does not apply. Pl. Resp. at 5-15. The State Court order and judgment is of "negligible preclusive effect" since there were no findings of fact and no allocation of the award between real and personal property, only "judgment in a sum certain." Pl. Resp. at 6-7. Specifically, the State Court "judgment does not contain sufficient factual findings or reference to the evidence underpinning those findings that would allow the Court to determine what issues were actually litigated and decided by the [S]tate [C]ourt." *In re Ryan*, 408 B.R. 143, 166 (Bankr. N.D. Ill. 2009). Although the parties in the State Court action "disputed the value of the improvements to the real property . . . . [t]here is no basis to presume that the court intended to[,] or did in fact[,] include the value of the Gorskis' personal property in the award." Pl. Resp. at 10. Moreover, the award was not based "on a presentation of evidence, but, rather, on a mediated figure" that took into account the fact that the City could award no more than $100,000 in a settlement and was entered "to avoid a trial on damages." Pl. Resp. at 10-11; *see also* Pl. Resp. at 3 (asserting that the judge "strong-armed the parties [to the State Court action] into settlement, thereby avoiding what probably would have been a rather agonizing, untidy trial"). Since "there is nothing to suggest" that the value of the personal property was actually decided, issue preclusion does not apply. Pl. Resp. at 11.

In addition, the State Court has no jurisdiction to determine Plaintiffs' entitlement to federal tax deductions, therefore "[issue preclusion] should be applied narrowly in tax cases." Pl. Resp. at 7 (citing *Anderson, Clayton & Co.* v. *United States*, 562 F.2d 972, 992 (5th Cir. 1977) ("We start from the proposition that strong policy considerations favor confining narrowly the scope of [issue preclusion] in tax cases.")).

Plaintiffs also argue that "[i]t is doubtful that the [State] [C]ourt could have determined the value of and the rights to the personal property [not affixed to the real property]" because, "[u]nder Illinois law, a condemnation award does not encompass personal property that does not constitute a fixture." Pl. Resp. at 8. The principle is the same for an action "seeking compensation for the unlawful demolition of the improvements to the realty." Pl. Resp. at 9.

Finally, Plaintiffs argue that there was no privity between Mr. Wayne Gorski and Mr. John R. Gorski in the State Court action. Pl. Resp. at 12-15. "The United States argues that the Gorskis are bound because . . . [Mr.] Wayne Gorski and [Mr.] John [R.] Gorski are brothers . . . . [and] because [Mr.] Wayne Gorski was suing as the representative of their father's estate . . . . That would be a good argument for precluding the estate on grounds of claim preclusion, but it is no basis for precluding [Mr.] John [R. Gorski] from suing in this case." Pl. Resp. at 12. The Government's argument, in substance, is that Mr. Wayne Gorski was the "virtual representative" of Mr. John R. Gorski in the State Court case, but virtual representation has been rejected in federal question cases. *See Taylor* v. *Sturgell*, 553 U.S. 880, 904 (2008) ("[W]e disapprove of the theory of virtual representation . . . . The preclusive effects of a judgment in a federal-question case decided by a federal court should instead be determined according to the established grounds for nonparty preclusion[.]"). Although the United States Supreme Court identified six exceptions to this rule, the only one that might apply includes suits brought by fiduciaries. *Id.* at 893-95. But the representative of an estate acts as a fiduciary only as to matters involving administration of the estate. *See In re Estate of Lis*, 847 N.E.2d 879, 886-87 (Ill. App. Ct. 2006). Mr. Wayne Gorski, however, "was not acting as an administrator of the estate but, rather, in the capacity of a representative of the estate seeking to vindicate a right in property that would have belonged to the decedent[.]" Pl. Resp. at 14. Therefore, the relationship between the Gorski brothers in the State Court action was "more personal than representative," and, regardless, the relationship's nature is a "question of fact." Pl. Resp. at 14.

### c.     The Government's Reply.

The Government replies that Plaintiffs' arguments do not undermine the preclusive effect of the State Court judgment. Gov't Reply at 1-19. The State Court convened a trial on the merits of the proper damages award only, as the issue of liability had already been determined on summary judgment. Gov't Reply at 7. There was no settlement, contrary to Plaintiffs' contention. Gov't Reply at 6. Specific findings of fact were not necessary, because the State Court only determined the issue of damages, and it is undisputed that both sides presented evidence on the issue. Gov't Reply at 7-8. In addition, personal property damages were included in the judgment because: they were at issue from the outset of the case; evidence was presented on the issue of the value of the personal property at trial; and the award was greater than the amount sought by Mr. Wayne Gorski for the real property alone. Gov't Reply at 8-9.

To the extent the Gorskis were unhappy with the amount of the judgment or felt that the State Court process "violated their rights," they could have appealed, but did not.  Gov't Reply at 9.

More to the point, Plaintiffs do not directly address any element of the legal test for issue preclusion.  Gov't Reply at 9-10.  The fact that this is a federal tax refund case does not change the scope of issue preclusion.  The principle cited by Plaintiffs that issue preclusion should be narrowly applied in tax cases only applies where both cases are tax cases and the original judgment determines entitlement to a particular tax benefit.  Gov't Reply at 10 (citing *Anderson, Clayton*, 562 F.2d at 992 ("The most persuasive policy consideration in the present context [for applying issue preclusion narrowly] is that the perpetuation of an erroneous tax decision over a number of years would prejudice the losing party and violate the policy of tax uniformity among taxpayers.")).  That is not the case here, where the issue is whether Plaintiffs were fully compensated for their loss as a result of the State Court judgment, thereby precluding a double recovery from a tax refund claim.

In addition, Plaintiffs wrongly attempt to "graft[]" on to the issue preclusion standard a requirement that the trial court enter findings of fact.  Gov't Reply at 11.  Furthermore, "actually litigated does not mean thoroughly litigated, but it does mean that the parties disputed the issue and the trier of fact resolved it."  *Ryan*, 408 B.R. at 165 (internal quotation marks omitted).  Here, the value of the Oakdale house and the personal property therein was "disputed and litigated by the parties" and "essential to the [S]tate [C]ourt judgment."  Gov't Reply at 12.  If the judgment had to resolve other issues, factual findings may have been necessary, but the only issue before the State Court was the value of the lost real and personal property.  The State Court answered that question the only way possible: with a monetary award.  Gov't Reply at 12.

Plaintiffs also are "incorrect and inconsistent" in asserting that the State Court did not have jurisdiction to determine the value of the personal property.  Gov't Reply at 13-14.  The Circuit Court of Cook County is a court of general jurisdiction with authority to adjudicate "all justiciable matters."  *Magnetek, Inc.* v. *Kirkland & Ellis, LLP*, 954 N.E.2d 803, 810 (Ill. App. Ct. 2011), *reh'g denied* (July 28, 2011), *appeal allowed*, 962 N.E.2d 483 (Ill. 2011) (internal quotation marks omitted).  Moreover, Illinois law provides that the Circuit Court can adjudicate "actions . . . to recover damages for an injury done to property, real or personal[.]"  735 Ill. Comp. Stat. 5/13-205.  Plaintiffs' reliance on eminent domain cases for the proposition that it was "doubtful" the State Court could decide the value of the personal property is irrelevant since the State Court case concerned a wrongful demolition claim.  Gov't Reply at 14-15 (citing *Vill. of Palatine* v. *Palatine Assocs., LLC*, 942 N.E.2d 10, 18 (Ill. App. Ct. 2010); *Dep't of Transp. v. Drury Displays, Inc.*, 764 N.E.2d 166, 171 n.3 (Ill. App. Ct. 2002); *Nat'l R.R. Passenger Corp.* v. *Faber Enters., Inc.*, 931 F.2d 438, 442 (7th Cir. 1991) (applying Illinois law)).

Finally, the Government reiterates that there are two bases for finding privity between Mr. Wayne Gorski and Mr. John R. Gorski, *i.e.*, an administrator-beneficiary relationship and a mutual and successive interest in the property rights of the Estate.  Gov't Reply at 16.  The United States Supreme Court's decision in *Sturgell* is inapposite because that case dealt with the preclusive effect of a *federal court* judgment under the *federal common law* of preclusion.  *Sturgell*, 553 U.S. at 904.  Moreover, *Sturgell* held that issue preclusion could apply in six

categories, including the two bases of privity established in this case. *See id.* at 893-95. Further, the evidence "discredits" Plaintiffs' contention that Mr. Wayne Gorski was not acting as administrator of the estate when he initiated the State Court action. Gov't Reply at 18. Plaintiffs' reliance on *Estate of Lis* is also misplaced, because that case involved a suit over property that was not an asset of the estate. *See Estate of Lis*, 847 N.E.2d at 888-89. In contrast, Mr. Wayne Gorski initiated the State Court suit to recover an asset of the Estate and thus, as administrator, owed a fiduciary duty to Mr. John R. Gorski as a beneficiary thereof. Gov't Reply at 18-19.

### 2.    The Court's Resolution.

I.R.C. § 165(c) allows individual taxpayers to claim a deduction for "losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, *or other casualty*, or from theft." I.R.C. § 165(c) (emphasis added). Section 165(a), however, limits the amount of any such deduction to "any loss sustained during the taxable year *and not compensated for by insurance or otherwise*." I.R.C. § 165(a) (emphasis added); *see also* Treas. Reg. § 1.165-1(c)(4) (requiring a taxpayer to adjust for "any insurance or other compensation received" when claiming a casualty loss deduction). Therefore, if the taxpayer is fully compensated for a claimed casualty loss, the taxpayer is not entitled to a deduction. *See* I.R.C. § 165(a).

The dispositive issue, therefore, is whether the State Court's order and judgment precludes Plaintiffs from claiming a tax refund for the loss of the Oakdale house and personal property therein, because they were fully compensated for that loss by the damages awarded by the State Court and paid by the City.

To determine the preclusive effect of the State Court judgment, the court must apply Illinois state law. *See Enovsys*, 614 F.3d at 1342 (holding that "[t]he preclusive effect of a state-court judgment in a subsequent federal lawsuit is generally determined by the full faith and credit statute" and, therefore, the federal court is required to follow the law of the state where judgment was rendered to determine its preclusive effect). Pursuant to Illinois law, "[t]he doctrine of [issue preclusion] bars relitigation of an issue that was already decided in a prior case" where:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

*Hurlbert*, 938 N.E.2d at 512; *see also Am. Family Mut. Ins. Co.* v. *Savickas*, 739 N.E.2d 445, 451 (Ill. 2000) ("Additionally, the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation.").[4]

---

[4] Plaintiffs assert that issue preclusion must be applied narrowly in tax cases, citing the United States Court of Appeals for the Fifth Circuit's decision in *Anderson, Clayton*, 562 F.2d 972. That decision, however, involved the preclusive effect of a United States Court of Claims tax decision that the federal appellate court held was "contrary to accepted tax practice[.]" *Id.* at

Applying this test, the underlying issue presented in this case is the value of the loss of the Oakdale house and the personal property therein on the date of demolition. This is the precise issue decided in the State Court action in which the amended complaint asked for damages for *both* the value of the house *and* the value of the personal possessions. Gov't PFUF, Ex. 39 at B384. At trial, both parties introduced evidence on the value of the house; both parties had a witness testify, including Mr. John R. Gorski; and Mr. Wayne Gorski introduced a list of the personal possessions that were in the house and a corresponding packet of photographs of similar looking items Mr. John R. Gorski had printed off from the internet.[5] Gov't PFUF, Ex. 3 at B60-61; Pl. PFUF Resp., Exs. A ¶¶ 23-26, C ¶¶ 44-45; *see also* Gov't PFUF, Exs. 43 (real estate appraisals conducted by Nick Sanello and Jack Schlenk on behalf of Mr. Wayne Gorski and a real estate appraisal conducted by Sylvester J. Kerwin, Jr. on behalf of the City), 45 (packet of internet photos), 46 (personal property list). The trial judge entered judgment in favor of Mr. Wayne Gorski in the amount of $110,000. Gov't PFUF, Ex. 47 at B574. This is $9,225 *more* than the amount claimed for the house alone. Gov't PFUF, Ex. 43 at B396 (Jan. 20, 2003 letter from Charles Orzehoskie to the attorney for the City, Elizabeth A. Freidheim) ("[W]e are asking for $100,775 in damages for the loss of the building[.]").

Although the State Court order and judgment does not specifically allocate the award between the value of the house and the value of the personal property, it is clear, based on the undisputed evidence presented in this case, that the award was for both and determining both was essential to a final resolution of the case. *See Savickas*, 739 N.E.2d at 451 ("[A] decision on the issue must have been necessary to the judgment in the first litigation."); *see also Taylor v. Peoples Gas Light & Coke Co.*, 656 N.E.2d 134, 139 (Ill. App. Ct. 1995) ("[Issue preclusion] operates to preclude relitigation of an issue that has been fairly, completely, and necessarily resolved in a prior proceeding."). Moreover, allocating the award between the value of the house and the personal possessions is unnecessary both in that case and in this case. All

---

974. Specifically, that decision turned on "unique circumstances," where the "perpetuation of an erroneous tax decision over a number of years would prejudice the losing party and violate the policy of tax uniformity among taxpayers." *Id.* at 992. Moreover, in the prior case, the Government had "stipulate[d] the issue upon which the [prior] court base[d] its judgment," and it was not clear from the record that the parties intended the issue to be "conclusively determined for purposes of [issue preclusion.]" *Id.* at 992-93. Those policy considerations are not presented in this case. The "prior decision" at issue here is not a tax case, but a wrongful demolition case adjudicated under state law. Therefore, there is no danger of "perpetuat[ing] . . . an erroneous tax decision," nor "violat[ing] the policy of tax uniformity among taxpayers." *Id.* at 992. Furthermore, the State Court decision relevant to this case adjudicated the damages owed for the wrongful demolition, a quintessential state law issue with only an incidental effect on federal tax law.

[5] Mr. John R. Gorski had compiled a list of items that he remembered being in the house for submission in the State Court action. Gov't PFUF, Ex. 3 at B57, B60-70. In order to help value these items, he searched the internet for items that he thought looked similar to the items he remembered being in the house and printed photos of the similar items he found. Gov't PFUF, Ex. 3 at B57, B60-70.

that was required was that the State Court award the total damages for the combined loss of the house and personal possessions.  No more specific findings of fact were required.

Plaintiffs' position that, as a matter of law, the State Court could not have awarded damages for the loss of the personal property is also without merit.  Under the Illinois Constitution, state circuit courts, including the Circuit Court of Cook County, "have original jurisdiction of all justiciable matters" except for certain matters over which the Illinois Supreme Court has original jurisdiction.  Ill. Const. art. 6, § 9; *see also Magnetek*, 954 N.E.2d at 810 ("By the power of the Illinois Constitution, our circuit courts are courts of general jurisdiction[.]").  It is clear that Illinois law allows a plaintiff "to recover damages for an injury done to property, *real or personal*[.]"  735 Ill. Comp. Stat. 5/13-205 (emphasis added).  The cases cited by Plaintiffs in which Illinois courts held that they could not award damages for lost personal property are irrelevant, as they involve eminent domain actions.[6]  *See Village of Palatine*, 942 N.E.2d at 18 (holding that a lessee was not entitled to a condemnation award for the lessee's movable trade fixtures where the municipality did not seek to condemn personal property in its condemnation complaint); *see also Drury Displays*, 764 N.E.2d at 171 n.3 (noting that "the power of eminent domain extends to every kind of property," but the proceeding at issue was not to condemn personal property and therefore "the buildings and improvements could only be affected when they become legally a part of the soil to which they are attached"); *National Railroad Passenger*, 931 F.2d at 442 (holding, under Illinois law, that a lessee was not entitled to compensation for the taking of the lessee's personal property that was not affixed to the real property because that property was never taken, but instead was abandoned).

Second, the order and judgment entered in the State Court action is a final judgment on the merits, as it states that "the court finds in favor of the plaintiff," following a "bench trial" and with "the judge having heard the evidence."  Gov't PFUF, Ex. 47 at B574.  Therefore, that order and judgment "'amounts to a decision as to the respective rights and liabilities of parties based on the ultimate facts or the state of the facts disclosed by pleadings or evidence, or both, and on which the right of recovery depends.'"  *Richter* v. *Vill. of Oak Brook*, 958 N.E.2d 700, 709 (Ill. App. Ct. 2011) (quoting *Fried* v. *Polk Bros.*, *Inc.*, 546 N.E.2d 1160, 1164 (Ill. App. Ct. 1989)).

Plaintiffs attempt to undermine the legal effect of the State Court order and judgment by a collateral attack, suggesting that it was the result of a "strong-armed . . . settlement," is unavailing.  Pl. Resp. at 3.  To the extent Plaintiffs suggest that the order and judgment was a settlement, that is incorrect; the order and judgment was rendered after a "bench trial" and after "the judge . . . heard the evidence."[7]  Gov't PFUF, Ex. 47 at B574.  To the extent that Plaintiffs

---

[6] Plaintiffs incorrectly assert that the State Court action sought "compensation for the unlawful demolition *of the improvements to the realty*."  Pl. Resp. at 9 (emphasis added).  The complaint in the State Court action, however, could not be more clear that damages were sought "for the loss of the property *and personal possessions*[.]"  Gov't PFUF, Ex. 39 at B384 (emphasis added).

[7] Any such argument would be directly undercut by Plaintiffs' observation that the City attorney did not have the power to settle the case for more than $100,000.  Pl. Resp. at 10-11 (citing Pl. PFUF Resp., Ex. A ¶ 19 (affidavit of Charles Orzehoskie)).  Furthermore, Plaintiffs'

are attacking the thoroughness of the State Court's inquiry, the issue, as a matter of Illinois law, must only be "actually litigated," not "thoroughly litigated." *See Peoples Gas Light & Coke*, 656 N.E.2d at 141 ("'[A]ctually litigated' does not mean thoroughly litigated, but only that the parties disputed the issue and the trier of fact resolved it."). Plaintiffs do not dispute that both parties in the State Court action presented evidence and had an opportunity to argue their case before the State Court judge. That is sufficient to satisfy the "actually litigated" requirement. *See id.* ("The 'full and fair opportunity' [to litigate] requirement is satisfied even if only a slight amount of evidence was presented on the disputed matter decided in the first suit. . . . [Issue preclusion] generally will apply as long as the party had a procedural, substantive, and evidentiary opportunity to be heard on the issue."). Moreover, Mr. Wayne Gorski had the same incentive to litigate the State Court action with the same vigor as Plaintiffs have demonstrated in this case. *See Savickas*, 739 N.E.2d at 451 ("Even a party who did litigate an issue in a prior case might not be estopped by the result therein if he can show that the original litigation was a side show rather than a struggle to the finish." (internal quotation marks omitted)); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1982) ("[R]elitigation of the issue in a subsequent action . . . is not precluded [when]  . . . : (5) There is a clear and convincing need for a new determination of the issue . . . (c) because the party sought to be precluded . . . did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action."). To the extent that Plaintiffs contend that there were procedural violations during the State Court trial or that the State Court should have awarded higher damages, those issues should have been resolved through the Illinois appellate process, but were not pursued.

Third, under Illinois law, privity "exists when parties adequately represent the same legal interest," *i.e.*, "the identity of the interest controls, not the nominal identity of the parties." *State Farm*, 914 N.E.2d at 588. In particular, privity exists between the administrator of an estate and the beneficiary of an estate. *Id.* at 589; *Bryntesen*, 167 N.E.2d at 585 (same); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 41 cmt. c (1982) ("An administrator of a decedent's estate . . . ha[s] authority to represent the estate and the interests of those who are its beneficiaries[.]"). Although the caption of the State Court action does not indicate that Mr. Wayne Gorski filed that case in his capacity as Administrator of the Estate, it is clear from the uncontroverted evidence submitted in this case that he did. Gov't PFUF, Ex. 2 at B28 (deposition testimony of Wayne Gorski); Gov't PFUF, Ex. 3 at B55 (deposition testimony of John R. Gorski); Pl. PFUF Resp., Ex. A ¶ 12 (affidavit of Charles Orzehoskie); *see also* Sec. Am. Compl. ¶¶ 13-14. Moreover, all of the State Court pleadings refer to Mr. Wayne Gorski as the "Administrator." Gov't PFUF, Exs. 39 at B380, B383, 40 at B388.

Plaintiffs rely on *Estate of Lis* to establish that Mr. Wayne Gorski did not have a fiduciary relationship with Mr. John R. Gorski as to the State Court action, because Mr. Wayne Gorski "was not acting as an administrator of the estate, but, rather, in the capacity of a representative of the estate[.]" Pl. Resp. at 14. But *Estate of Lis*, 847 N.E.2d 879, held that there was no fiduciary duty between an administrator of an estate and a beneficiary as to the distribution of a life insurance plan that was not part of the estate. *Id.* at 888-89. In other words, "the distribution of the [life insurance] [p]lan was not within the scope of the fiduciary

---

contention that the judgment was "a formalization of the judge's will, not his judgment," Pl. Resp. at 3, is meaningless.

relationship[.]"  *Id.* at 889.  In contrast, the Oakdale house and personal property therein was part of the Estate.

In the alternative, privity is established between Mr. John R. Gorski and Mr. Wayne Gorski as owners of a mutual or successive property right in the Oakdale house and personal property therein.  Illinois law recognizes that privity exists between persons with mutual or successive interests in the property that was the subject of an earlier action.  *See Sunset Ridge School District*, 692 N.E.2d at 1285 ("[F]or purposes of *res judicata*, privity exists between parties who share a mutual or successive relationship in property rights which were the subject of an earlier action.").  Specifically, such a relationship "may be . . . by descent[.]"  *Collins Co., Ltd.* v. *Carboline Co.*, 532 N.E.2d 834, 839 (Ill. 1988).  As such, even if Mr. Wayne Gorski initiated the State Court action solely in his personal capacity, Mr. John R. Gorski and Mr. Wayne Gorski held a mutual interest in the Oakdale house and personal property therein as co-heirs to the Estate.  And, if suit was brought on behalf of the Estate, Mr. John R. Gorski would have held a successive interest in the property as an heir to the Estate.[8]

For these reasons the court has determined that the Government has established that Plaintiffs are barred, under the doctrine of issue preclusion, from re-litigating the issue of the value of the Oakdale house and the personal property therein.  Since the resolution of this issue is dispositive in this case, the court is not required to address the Government's alternate arguments.

## IV.    CONCLUSION.

The Government's Motion For Summary Judgment is granted.  The Clerk of the Court is directed to enter judgment for the Defendant.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

---

[8] Plaintiffs argue that the Government's privity argument is actually that Mr. John R. Gorski was "virtually represented" by Mr. Wayne Gorski in the State Court action, which has been rejected as a proper basis for finding privity for purposes of issue preclusion by the United States Supreme Court.  *See Sturgell*, 553 U.S. at 904.  *Sturgell*, however, was limited to cases involving "[t]he preclusive effects of a judgment in a federal-question case decided by a federal court," *id.*, and does not address the preclusive effects of an order and judgment in a state law case decided by a state court.  Regardless, *Sturgell* upheld the viability of six recognized categories for establishing privity, including between "preceding and succeeding owners of property" and "suits brought by . . . fiduciaries."  *Id.* at 893-94.  These are the same two types of relationships that the court has determined apply in this case.  Therefore, the court has not relied on a virtual representation theory.